**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAULA Y. CALDWELL, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 1848 SRW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Self-represented Plaintiff filed a Brief in support of the Complaint, titled "Rebuttal to the Answer." ECF No. 19. Defendant filed a Brief in Support of the Answer. ECF No. 22. Plaintiff did not file a Reply. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On December 31, 2018, Plaintiff Paula Caldwell protectively filed an application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq*. Tr. 60, 110-16.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 58-66.

Plaintiff appeared for a hearing on February 26, 2020. Tr. 24-48. Plaintiff, without representation, testified concerning her disability, daily activities, functional limitations, and past work.[2] Id. The ALJ also received testimony from vocational expert Susan Johnson, M.S. Id. at 44-48. On March 4, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 8-21. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 6-7, 108-09. On October 20, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses.[3] The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to

---

[2] During the hearing, the ALJ informed Plaintiff of her right to representation and asked her whether she would like to obtain a representative prior to proceeding. ECF No. 18-3 at 29. Plaintiff indicated her desire to continue with the hearing. Id.

[3] Self-represented Plaintiff did not include a statement of uncontroverted material facts with her Brief in Support of the Complaint as required by the Case Management Order issued on December 22, 2020. See ECF No. 4 at 2. The Commissioner acknowledged this omission in his Brief in Support of the Answer and stated his "general agreement with Plaintiff's recitation of the facts of this case to the extent they were set forth on pages 1 through 9 of Plaintiff's Brief." ECF No. 22 at 2.

do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. Tr. 13. Although she engaged in substantial gainful activity from November 2018 to December 2018, there had been a continuous 12-month period during which she did not engage in substantial gainful activity. *Id*. Plaintiff had the severe impairments of "obesity, major joint dysfunction, and osteoarthritis." Tr. 13-14. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 14. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform sedentary work, defined in 20 CFR 404.1567(a), including the ability to lift and carry up to 10 pounds, stand and/or walk up to 2 hours in an 8 hour workday, and sit up to 6 hours in an 8 hour workday. She can occasionally climb, balance on uneven surfaces, stoop and

crouch. She cannot kneel or crawl. She should avoid concentrated exposure to extreme cold, vibration, hazardous moving machinery and hazardous unprotected heights. She would need a cane when moving about the workplace.

Tr. 14-16. The ALJ found Plaintiff "was capable of performing past relevant work as a medical secretary and social worker as such work does not require the performance of work-related activities precluded by her RFC." Tr. 17. Therefore, the ALJ concluded Plaintiff was not under a disability from November 8, 2018 through the date of her decision on March 4, 2020. *Id.*

## IV.    Discussion

Plaintiff titled her Brief in Support of the Complaint as a "Rebuttal to the Answer." ECF No. 19. Plaintiff's specific arguments are somewhat difficult to decipher as she does not provide headings or cite to legal support. However, the Court agrees with the Commissioner's assertion that Plaintiff has raised three distinct issues: (1) whether her RFC is supported by substantial evidence; (2) whether the ALJ properly evaluated her subjective complaints; and (3) whether the ALJ properly concluded she could perform her past relevant work as a medical secretary and social worker.

As a preliminary matter, the Court notes Plaintiff asserts in her Brief that she became disabled in June of 2016. To the extent it is her intent to argue the ALJ incorrectly listed her onset date, the Court cannot agree. Plaintiff's application for DIB clearly identifies her alleged onset date as December 31, 2018. *See* Tr. 101. Plaintiff testified she "retired" on December 31, 2018, and was working full-time up to that date. Tr. 33-34. A review of her earnings record reveals full-time employment throughout the entire year of 2018, in which she made a total of $42,032.96. Tr. 134. Thus, the ALJ properly evaluated her impairments with an onset date of December 31, 2018.

**A. The ALJ's Formulation of Plaintiff's RFC**

The ALJ found Plaintiff has the RFC to perform sedentary work, including the ability to lift and carry up to 10 pounds; stand and walk up to 2 hours in an 8-hour workday with the use of a cane; sit up to 6 hours in an 8-hour workday; and occasionally climb, balance on uneven surfaces, stoop, and crouch. The ALJ determined, however, she is unable to kneel or crawl, and must avoid concentrated exposure to extreme cold, vibration, hazardous moving machinery, and unprotected heights. Tr. 14.

Within her Brief, Plaintiff states she cannot lift 10 pounds because it hurts her knees, hips and back, and cannot stand or walk up to 2 hours due to excruciating pain. Plaintiff asserts she can lift up to 2-3 pounds with minimum pain, and walk, stand, or sit for up to 5-6 minutes. She further asserts she cannot walk on uneven surfaces, stoop, or crouch. She describes her impairments as osteoarthritis, lumbar spinal stenosis, obesity, immune system disorder, depression, and anxiety. She states she suffers from severe pain and inflammation in her hips, knees, and back, and has side effects from her medications, which include "trouble thinking, trouble focusing, memory problems, nausea, dry mouth, can't sleep, tired all the time, sweating, dizziness, drowsiness, diarrhea, weakness, and agitation." ECF No. 19 at 6.

In determining Plaintiff's RFC, the ALJ first considered her hearing testimony. Tr. 15. Plaintiff indicated she could not work due to pain, throbbing, and aching in her hips, thighs, and back. Tr. 15, 38. She stated she has required a cane for stability since 2016. *Id.* She lives alone, maintains a driver's license with no restrictions, and can drive to doctor appointments and the grocery store, and was able to drive to the hearing approximately 25 minutes from her home. Tr. 15, 31-32.  Plaintiff described her hobbies as reading, watching television, and doing puzzles. Tr. 1, 39-40. She was able to attend an out-of-state family reunion with use of a wheelchair at the

7

airport, and confirmed she can cook, shower with a chair, and wash dishes. Tr. 15, 40-41.

Plaintiff listed her medications as Meloxicam, Duloxetine, and Tramadol, and over-the-counter

Tylenol. Tr. 15, 39. Contrary to the assertions in her Brief in which she endorsed a wide-range of

side effects, she testified at her hearing that she did not experience any side effects from her

medications:

> Q: Do you have any side effects to the medications that you take?
>
> A: So far not.

Tr. at 39. The ALJ also observed that Plaintiff stood twice at the hearing and used a cane. Tr. 15.

The ALJ reviewed her Function Report and the Third-Party Function Report. Tr. 15, 150-

80. Plaintiff self-reported she can make simple meals, shower, get dressed, drive, shop for

clothing, and perform most light household chores, not including yard work, with rest periods.

Tr. 182-84. The Court notes the Third-Party Function Report, completed by her friend,

contradictorily states that Plaintiff can make breakfast, but later indicates she cannot prepare her

own meals. Tr. 150, 152. However, her friend does corroborate Plaintiff's ability to perform

household chores, including laundry, drive, shop, and manage money. Tr. 152.

The ALJ then considered the medical evidence within the underlying record.[4] Tr. 15-16.

On April 28, 2016, Plaintiff underwent surgery on her right knee for a medial meniscus repair.

Tr. 320-21, 600-01. The injury was caused at her then place of employment when she "attempted

---

[4] The Court notes the record contains numerous treatment and physical therapy records from 2016 through 2018. Tr. 264-406, 422-49 464-97, 519-41, 571-99, 606-11. The DIB application asserts an alleged onset date of December 31, 2018, and the ALJ's opinion was issued on March 4, 2020. Although an ALJ can consider records prior to the alleged onset date, the relevant period for consideration of a plaintiff's disability claim is the time between the alleged disability onset date and the date of the ALJ's decision. *Estes v. Barnhart*, 275 F. 3d 722, 725 (8th Cir. 2002); *Van Vickle v. Astrue*, 539 F. 3d 825, 830 (8th Cir. 2008) (the court need not rely on medical evidence predating the alleged disability onset date). *Compare to Burks-Marshall v. Shalala*, 7 F.3d 1346, 1348 n.6 (8th Cir. 1993) ("Evidence from the record of a prior claim may be relevant to a claim of disability with a later onset date."). As such, the Court's discussion will include some relevant records pre-dating 2019, but will predominately concentrate on those created between December 31, 2018 and March 4, 2020.

to break up a fight, and was pushed down onto the floor." Tr. 474, 573. Subsequent to the

surgery, Dr. Young directed her to complete post-operative physical therapy. Tr. 316-19, 332-53,

578-79. On May 9, 2016, Dr. Young authorized her to perform sedentary work with

opportunities to elevate and ice her leg. Tr. 580-81. On May 23, 2016, Dr. Young indicated she

was able to perform "day-to-day activities . . . pain free" and sedentary work. Tr. 582-83.

Physical therapy records from June 10, 2016, noted she was able to return to work at her "desk

job." Tr. 273, 354, 357. Plaintiff was directed to continue physical therapy, and she complied. Tr.

276-77, 282-83, 287, 293-96, 315, 359-406, 422. On September 26, 2016, Dr. Young opined

Plaintiff would have a "permanent restriction" limiting her "to a light job demand category." Tr.

598. On October 19, 2016, Dr. Young wrote a letter to her employer stating she completed

physical therapy in September with "maximal medical improvement." Tr. 599.

The ALJ found Dr. Young's post-operative treatment notes regarding her need to elevate

or ice her leg irrelevant to her RFC because the restriction was a temporary directive related to

her immediate recovery needs from her April 2016 surgery and more recent notes to not indicate

such restrictions. Tr. 16. However, the ALJ found that Dr. Young's opinion as to her ability to

perform sedentary work was persuasive and "consistent with claimant's continued complaints of

pain [and] use of a cane[.]" *Id.*

Treatment records from September 20, 2016 and December 14, 2016 reflect that during

physical therapy Plaintiff was instructed to perform "aggressive" lunges and knee bends which

caused increased pain, and a potential additional injury. Tr. 464, 468. However, by April 30,

2018, chiropractic notes indicated her self-report of "moderate improvement," and an ability to

carry groceries, lift, sit to stand, climb stairs, drive, perform household chores, lift children,

dress, bathe, sleep, walk, sit, stand, and bend. Tr. 427

On September 21, 2018, Plaintiff obtained right and left knee X-rays. Tr. 15, 413-16, 448. The findings indicated "normal alignment of the knees" and "progressed bilateral moderate medial and mild lateral and patellofemoral compartment osteoarthritis" with no fractures or knee joint effusions. *Id.* Corresponding treatment notes from her treating orthopedic physician, Dr. Mark Halstead, indicated she was "well appearing and in no distress," and had "full range of motion of both knees" with "some pain reported to full flexion bilaterally." Tr. 444. Dr. Halstead interpreted the X-ray results, finding no evidence of ACL pathology and some degenerative tearing of the meniscus. Tr. 445. He opined the results of her physical examination and radiological results were most consistent with "osteoarthritis in her knees rather than other issues." *Id.* He recommended additional physical therapy, Aleve, icing, and injections for pain relief. *Id.* Plaintiff declined injections at that time. *Id.*

On October 17, 2018, her orthopedic surgeon, Dr. Daniel J. Schwarze, administered Celestone Soluspan injections to her left and right knee. Tr. 516-17. Treatment notes from this visit describe Plaintiff to have a "mild antalgic gait" with 5 out of 5 strength in both knees. Tr. 516. Plaintiff "declined any surgical interventions" and was told to schedule a follow up appointment in four months.

On December 14, 2018, Dr. Halstead penned a one-page letter indicating the following opinion:

> This is to certify that Paula Y. Caldwell has been under my care of an orthopedic conditions.
>
> She has moderate to severe arthritis in both of her knees. She is severely limited with daily activities. She cannot do the majority of her activities of daily living and cannot walk more than 50 feet without significant pain. She has significant difficulties getting up and down from a chair or in and out of a car. She cannot do her grocery shopping without significant pain. She has trouble significantly with stairs and cannot kneel, squat or stoop. She has to use a shower bench as she

10

> cannot stand in the shower or get up out of the bathtub. She is having difficulties with general housework.

Tr. 421, 518. On the same date of writing the above letter, Dr. Halstead performed a physical examination. Tr. 447. His treatment notes described Plaintiff to be well-appearing, in no acute distress, and exhibiting a full range of motion to her knees despite having "some pain to flexion and extension." Tr. 447. He further wrote she had "mild effusion to each knee" and appeared with an "antalgic gait." *Id.* He, again, recommended injections for pain relief, which she declined. *Id.*

The ALJ found the limitations in Dr. Halstead's one-page letter to be "inconsistent with her level of conservative treatment and medication, as she ha[d] been participating in physical therapy with some improvement and [took] no narcotic pain medication." Tr. 16. The ALJ further determined Dr. Halstead's opinion to be inconsistent with her ability to live alone, her self-reported daily activities, the State Agent's consultative opinion, and the opinion of Plaintiff's treating orthopedist, Dr. Jason Young, that Plaintiff could perform sedentary work. *Id.*

The record reveals Plaintiff appeared for regular chiropractor visits, Tr. 541-54, and began additional physical therapy at the start of 2019. [5] Tr. 498-504. On February 8, 2019, Plaintiff reported to Dr. Halstead that she was experiencing "significant pain with any [weight bearing] activities" and "chronic knee pain that has worsened in the past several years." Tr. 502. Dr. Halstead noted Plaintiff's continued apprehension towards recommended injections, and her personal preference to use over-the-counter Ibuprofen to manage her pain. Tr. 498. He indicated she had a "fair prognosis." Tr. 502. On February 22, 2019, Plaintiff described her pain to Dr. Halstead as a 5 to 6 out of 10, which elevated to an 8 to 9 out of 10 when walking. Tr. 505. She

---

[5] Although the ALJ referenced her participation in physical therapy and chiropractor sessions throughout 2019, he did not include a summary of these records in his determination.

indicated needing a scooter to get around stores, and generally avoided stairs. *Id.* Dr. Halstead described her to have a "slow cadence" and "antalgic gait." *Id.*

Despite her reports to Dr. Halstead, the ALJ observed her chiropractic records consistently indicated improvement in range of motion and decreased pain. Tr. 541-54. For example, on March 18, 2019, Plaintiff reported that since her last visit on February 21, 2019, her activities of daily living, range of motion, endurance, and pain levels improved. Tr. 545. On March 28, 2019, Plaintiff reported her "ability to function ha[d] improved [by] 30% since [her] last visit." Tr. 547. On April 11, 2019, Plaintiff reported her "ability to function ha[d] improved [by] 20% since [her] last visit." Tr. 548.

On April 4, 2019, Plaintiff visited with internal medical physician, Dr. James Avery, who noted she had begun to develop "daily low mood" and "crying spells," which severely limited her activity. Tr. 511. During this appointment, Plaintiff indicated she was only taking Advil and Tylenol for pain, and reported that Dr. Halstead wanted her to work on "additional strengthening" before he would proceed with a total knee replacement. Tr. 511, 514. Dr. Avery urged her to engage in regular aerobic exercise and to schedule a follow-up appointment in three months to reassess her psychological condition. *Id.* He also spoke to her regarding medication compliance and instructed her to take her Norvasc, Vitamin D, Cymbalta, and Meloxicam as directed. Tr. 511-14.

On August 23, 2019, Plaintiff appeared for a follow-up visit with Dr. Halstead. Tr. 559-60. Plaintiff reported she continued to experience bilateral knee pain, but she felt the physical therapy exercises were helping. Tr. 559. Upon physical examination, she was described to be "well appearing" and "in no acute distress." She had an antalgic gait and ambulated with a cane. *Id.* Dr. Halstead noted he was unable to complete one of her disability forms upon her request

12

because "it asked about her being able to perform any job in any field and given there would be

some home-based jobs that she could do [he could not] sign off on her form." *Id.* Dr. Halstead,

again, suggested injections for pain relief, and she agreed. During the visit, Plaintiff was

administered a Depo-Medrol injection to both of her knees. *Id.*

The record indicates continued physical therapy starting on August 28, 2019. Tr. 624. At

which time she indicated "her pain medication, anti-inflammatories, and ice help[ed] alleviate

her pain" and was "independent with all ADLs" despite requiring additional time to complete

them due to pain. *Id.* On November 25, 2019, December 2, 2019, and December 12, 2019,

Plaintiff reported "noticed improvement in frequency/intensity" of pain from injections and

indicated her desire to continue such treatment. Tr. 671, 678, 685. During these visits, she

obtained an additional trigger point injections. Tr. 674-77, 681-84, 688-92. On December 19,

2019 and January 21, 2020, Plaintiff's "overall condition" was described to be "progressing

slow, but steady." Tr. 657, 665. On the same dates, she received left hip trigger point injections

for pain. Tr. 659-62, 667-70.

The ALJ explicitly considered Plaintiff's obesity, citing to a treatment record which

indicated she had a body mass index of 37, and included it as a severe impairment. Tr. 13, 15,

513. He noted, however, that Plaintiff "does not allege[] any limitations from her weight" and

determined that "while her obesity likely exacerbates her pain in her back and knee joints, it does

not prevent her from performing sedentary work." Tr. 15.

The ALJ further considered the Physical RFC assessment performed by State Agent

consultative examiner, Denise R. Trowbridge, M.D., dated February 25, 2019. Tr. 15, 53-56. Dr.

Trowbridge opined Plaintiff could frequently lift and/or carry up to 10 pounds; occasionally lift

and/or carry up to 10 pounds; stand and/or walk for 2 hours; sit for a total of about 6 hours in an

8-hour workday; and push/pull without restriction. Tr. 54. She further indicated Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance stoop, or crouch; and never kneel or crawl. *Id.* She did not believe Plaintiff had any manipulative, visual, or communicative limitations, but should avoid concentrated exposure to extreme cold, vibration, and hazards, such as machinery or heights. Tr. 54-55. The ALJ found this assessment to be persuasive because it was consistent with the medical record and conservative treatment. Tr. 16. The ALJ also found Plaintiff's self-reported activities of daily living, including driving, shopping, cooking, and cleaning, supportive of Dr. Trowbridge's assessment that she could perform sedentary work. *Id.*

After reviewing the medical record, as summarized above, the ALJ determined the evidence "indicates that the claimant has been treated conservatively with therapy, injections and medication with some improvement." Tr. 15. The ALJ noted she did not require additional surgeries after the repair of her meniscus in 2016. *Id.* Although she used a cane to walk, she was able to work through the end of 2018 despite her requirement for an ambulation device. *Id.*

Plaintiff's Brief appears to argue the ALJ should have considered lumbar spinal stenosis, immune system disorder, anxiety, and depression as severe impairments. The Court finds the underlying record does not support her position. First, Plaintiff has not pointed to any treatment notes from the relevant time period reflecting a lumbar spinal stenosis or immune system disorder diagnosis, and the Court can find none. Second, while the Court acknowledges treatment notes indicating an onset of depression in 2019, the record is devoid of any limitations related to her mental health or active treatment for such symptoms. *See* Tr. 513 (depression described as "newly identified" on April 4, 2019); 562 ("major depressive disorder with single episode" listed as a diagnosis); 617 (same); 627 (same). *See Kirby v. Astrue*, 500 F.3d 705, 707

14

(8th Cir. 2007) (a plaintiff has the burden to establish the severity of an impairment).

Additionally, when Plaintiff filed her application for SSI benefits, she did *not* list depression or

anxiety as a medical condition, Tr. 137, nor did she assert in her Function Report that such

impairments limited her ability to work, *see* Tr. 181. Notwithstanding her Brief, Plaintiff failed

to allege these additional alleged impairments as a basis for disability and failed to testify that

they caused any limitations on her ability to function. *See Anderson v. Barnhart*, 344 F.3d 809,

814 (8th Cir. 2003) (claim of additional condition waived on appeal where the plaintiff did not

allege any limitation from the impairment in his application or during his hearing). Thus, the

Court finds the ALJ properly determined her severe impairments to include obesity, major joint

dysfunction, and osteoarthritis.

Plaintiff's Brief "disagrees" with the ALJ's determination that she does not have an

impairment or combination of impairments which medically equals the severity of one of the

listed impairments because her "obesity makes everything worse." ECF No. 19 at 2. Although

Plaintiff may disagree with the ALJ's analysis of her obesity in combination with her

osteoarthritis and major joint dysfunction, the ALJ listed all of the impairments upon which

Plaintiff was basing her claim of disability, including obesity, and specifically noted his

obligation to consider her impairments in combination. This analysis was sufficient. "To require

a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Browning

v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (citing *Gooch v. Secretary of H.H.S.*, 833 F.2d

589, 592 (6th Cir. 1987)). *See also Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (when an

ALJ references claimant's obesity during the claim evaluation process, such review may be

sufficient to avoid reversal); *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (no error

when ALJ fails to explain why impairment does not equal listing as long as overall conclusion is

correct). Moreover, as more fully discussed below, Plaintiff's RFC is supported by substantial evidence within the underlying record.

Plaintiff also appears to argue the ALJ inappropriately determined she could perform a reduced range of sedentary work with postural and environmental limitations. Based on a careful review of the ALJ's determination and the underlying record, the Court does not agree with Plaintiff's position. With regard to Plaintiff's RFC, "a disability claimant has the burden to establish [her] RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines the RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [plaintiff's] own description of [her] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most a plaintiff can still do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

Most notably, Plaintiff's physicians did *not* endorse impairments so severe that she would be unable to maintain employment. On May 9, 2016, less than one month after her right knee surgery, Dr. Young approved her to perform sedentary work as long as she had "opportunities to elevate." Tr. 581. Physical therapy notes from June 2016 indicate she "returned to her desk job" as a childcare worker with "minimal discomfort in the knee," and was approved to drive. Tr. 273, 293. On June 24, 2016, Plaintiff requested an "off-work note for her full time job," but Dr. Young did not believe such a restriction was necessary because "sedentary work with icing and elevation [was] certainly reasonable." Tr. 587-88. On July 11, 2016, Dr. Young continued to opine she was capable of sedentary work with the need "to ice and elevate for [] two weeks at a minimum." Tr. 590. Although Plaintiff complained of pain, she indicated "in general, . . . the progression of [her] symptoms [were] better." Tr. 371, 375, 378, 400. By September 2016,

Plaintiff was permitted to perform light duty work. Tr. 468. Approximately three years later, on August 23, 2019, Dr. Halstead indicated in a treatment note that he could not sign off on her being completely unable to maintain employment. Tr. 559.

As the ALJ noted, the record supports Plaintiff's consistent use of a cane since her surgery in 2016. Tr. 15-16, 38, 148, 156, 443, 507, 559, 562-63, 569, 624-38, 658, 666, 681. Her earning records show she maintained full-time employment until the end of 2018 despite her requirement for an ambulation device and needs for elevation and icing. Tr. 122. Plaintiff testified she "retired" from her full-time job on December 31, 2018. Tr. 33-34.

In formulating Plaintiff's RFC, the ALJ properly considered that her treatment was conservative. For example, on September 21, 2018, Dr. Halstead advised Plaintiff to take Aleve twice daily, ice her knee every evening for 15-20 minutes, and continue physical therapy. Tr. 411. As for lower back pain, her treatment consisted of using a cane for ambulation along with Icy Hot, topical Biofreeze, and Ibuprofen. Tr. 443. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (an ALJ may consider a conservative course of treatment as indicative that symptoms are not disabling). *See also Ezell v. Colvin*, No. 1:14-CV-39-JMB, 2015 WL 5158484, at *11 (E.D. Mo. Sept. 2, 2015) (describing conservative treatment to consist of physical therapy, pain medication, and trigger point injections).

Moreover, from September 2018 to August 2019, Plaintiff's treating physicians recommended injections for pain relief, but she regularly declined. *See* Tr. 444, 447, 498. On December 14, 2018, two weeks before Plaintiff's alleged onset date, Dr. Halstead "strongly encouraged her" to agree to injections for pain relief because he "did not want her to suffer any longer than she needs." Tr. 447. Despite his persistent treatment recommendation, Plaintiff refused. *Id.* Again, in February of 2019, Dr. Halstead noted Plaintiff's preference to use

17

Ibuprofen to manage her pain, rather than the recommended injections. Tr. 498. *See O'Donnell v. Barnhart*, 318 F.3d 811, 819 (8th Cir. 2003) (failure to follow a prescribed course of treatment may detract from a plaintiff's credibility). On April 4, 2019, Plaintiff reported using only Advil or Tylenol to manage pain, and stated she had stopped taking Meloxicam, a non-steroid anti-inflammatory, "some time ago." Tr. 511. Use of relatively mild pain medication weighs against a finding that Plaintiff was physically unable to perform sedentary work with the physical limitations assigned by the ALJ's RFC determination. *See, e.g., Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992).

When Plaintiff finally agreed to injections on August 23, 2019, she consistently reported a reduction of symptoms. Tr. 559, 663 (noting "improvement in frequency and intensity of pain after obtaining injection), 671, 678, 685. In conjunction with the injections, Plaintiff also reported that pain medication, anti-inflammatories, and ice helped to alleviate her pain. Tr. 624. Conditions which can be controlled by treatment are not disabling. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (if an impairment can be controlled by treatment, it cannot be considered disabling).

Plaintiff's RFC is further supported by physical examination results. On September 21, 2018 and December 14, 2018, Dr. Halstead indicated she had "full range of motion of both knees." Tr. 444, 447. On April 4, 2019 and August 29, 2019, Plaintiff's joint aches and pains were described as "stable." Tr. 512, 562. Chiropractic reports consistently indicated improvement in range of motion and decreased pain throughout 2019 with "slow, but steady" progression. Tr. 541-54, 657, 665, 672, 679, 686, 698, 702, 704, 707, 710.

The ALJ also properly considered Plaintiff's activities of daily living. Plaintiff's Function Report indicated she can make simple meals, shower, get dressed, drive, shop for clothing, and perform most light household chores, not including yard work, with rest periods. Tr. 182-84. Chiropractic notes, dated April 30, 2018, indicated her ability "to participate in carrying [g]roceries, lifting, sit to stand, climb stairs, driving, household chores, lift children, self-care (dressing, bathing), sleeping, walking, sitting, standing and bending" with "moderate improvement." Tr. 427. On February 8, 2019, Plaintiff reported to her physical therapist that "she has to be on her feet to care for her mother," although she cannot stand for "any significant amount of time." Tr. 498. She also indicated she lives alone in a home which requires her to ascend stairs to enter. Tr. 499. On August 28, 2019, Plaintiff reported "being independent with all ADLs [activities of daily living]" although her pain symptoms "requires increased time to complete them." Tr 624.

Furthermore, it was within the ALJ's zone of choice to find Dr. Halstead's one-page letter indicating significant physical limitations to be unpersuasive, and the consultative examination of Dr. Trowbridge to be persuasive, when comparing those opinions to Plaintiff's own description of her daily activities, conservative treatment, and one-year period in which she declined recommended pain relief treatment through injections which were ultimately helpful in reducing her symptoms. *See, e.g.*, *Biglari v. Saul*, No. 4:19-CV-03116-SPM, 2021 WL 794527, at *6 (E.D. Mo. Mar. 2, 2021) ("It was not outside the zone of choices available to the ALJ to construe Plaintiff's failure to comply with recommended and prescribed treatments as evidence that is inconsistent with [treating physician] opinions regarding [p]laintiff's functional limitations.").

Here, the ALJ properly relied on the objective medical evidence, observations from physicians, and Plaintiff's testimony to determine her RFC. The Court finds the ALJ's RFC determination "does not lie outside the available zone of choice" as substantial evidence in the record as a whole supports her ability to perform sedentary work with limitations. *See, e.g., Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

**B. The ALJ's Consideration of Plaintiff's Subjective Complaints**

The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. Tr. 15-16.

An ALJ may discredit Plaintiff's subjective claims of disabling symptoms to the extent they are inconsistent with the record, "including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions." *Hicks v. Colvin*, 2014 WL 651380 (E.D. Mo. Feb 19, 2014) citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96-7p. "The ALJ [is] not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the plaintiff's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir.2000). "Because the ALJ [is] in a better position to evaluate credibility, we defer to his credibility determinations as long as they [are] supported by good reasons and substantial evidence." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

A plaintiff's choice to decline medical recommendations and prescribed treatments may be considered for various reasons, including the credibility of subjective complaints. *See, e.g., Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (discrediting claimant's subjective complaints due to her noncompliance with prescribed diet and medications); *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (discrediting a medical opinion because it failed to also consider plaintiff's noncompliance). Improvement with treatment is also another consideration an ALJ may consider. *See King v. Berryhill*, No. 4:17-CV-2512-ERW, 2019 WL 1129971, at *6 (E.D. Mo. Mar. 12, 2019) (ALJ may evaluate plaintiff's improvement with treatment in analyzing the credibility of subjective complaints of pain).

Plaintiff in early 2019 reported to Dr. Halstead that she was experiencing pain with weight bearing activities and chronic knee pain. Tr. 502. Dr. Halstead repeatedly suggested injection treatment to prevent her from "suffer[ing] any longer than she needs." Tr. 447. Dr. Halstead noted Plaintiff's continued apprehension towards recommended injections, and her personal preference to use over-the-counter Ibuprofen to manage her pain. Tr. 498. Plaintiff later agreed with Dr. Halstead's recommendation for injections, and she ultimately "noticed improvement in frequency/intensity" of pain after receiving these injections and indicated her desire to continue such treatment. Tr. 671, 678, 685. Thus, the ALJ appropriately considered her history of declining injection treatment as a factor relevant to her subjective complaints of disabling pain.

Additionally, contradictions between a plaintiff's sworn testimony and what she actually told physicians may weigh against her credibility. *See Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006) (finding a lack of credibility when plaintiff's testimony conflicted with medical documentation). Contrary to the assertions in Plaintiff's Brief in which she endorsed a wide-

21

range of side effects, she testified at her hearing she did not experience any side effects from her medications. Tr. 15, 39. Notably, in her Function Report, she checked the "yes" box as to medication side effects, but in the section designated to list the medications and describe the issues she wrote, "none known at present." Tr. 187. The underlying record also does not reflect any instances where she complained of medication side effects to her treatment providers, and Plaintiff does not cite to any treatment notes in her Brief.

   While the Court acknowledges a plaintiff need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (ALJ properly considered that the plaintiff watched television, read, drove, and attended church, upon concluding subjective complaints of pain were not credible). The Eighth Circuit has held that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a plaintiff's] subjective complaints and [her] activities diminish [her] credibility." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). *See also Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996) (plaintiff's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits).

   On August 28, 2019, Plaintiff reported "her pain medication, anti-inflammatories, and ice help[ed] alleviate her pain" and was "independent with all ADLs" despite requiring additional time to complete them due to pain. Tr. 624. She further testified at the hearing and indicated in her Function Report she can make simple meals, shower, get dressed, drive, shop for clothing, and perform most light household chores, not including yard work, with rest periods. Tr. 182-84.

She informed her physical therapist that she lives alone in a home requiring her to ascend stairs to enter. Tr. 499. Her requirement for an ambulation device did not prevent her from maintaining full-time employment between 2016 and 2018, and Dr. Halstead declined to complete disability forms because he could not opine she was unable to perform all jobs in any field. Tr. 15, 134, 559. Testimony and medical records regarding Plaintiff's daily activities provide substantial evidence to demonstrate her pain is not as disabling as she alleges.

The Court finds the ALJ appropriately addressed the *Polaski* factors. The ALJ noted inconsistencies between her testimony and the underlying record related to medication side effects, her failure to agree to recommended treatment, and her reports of reduced symptoms after finally agreeing to such treatment; her ability to perform various activities of daily living; and the lack of medical reports supporting complete disability.

### C. The ALJ's Determination Regarding Plaintiff's Past Relevant Work

Lastly, Plaintiff generally disagrees with the vocational expert's testimony that she can perform her past work as a medical secretary and social worker. The vocational expert's testimony was based on a hypothetical individual of the plaintiff's age, education, and work experience who could perform sedentary exertional work with additional limitations. ECF No. 44-47. Plaintiff does not specify the functional restrictions she believes were omitted from the hypothetical questions, nor does she offer any detail regarding what hypothetical questions she believes should have been presented to the vocational expert.

"A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true" by the ALJ. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Id.* However, "the ALJ may exclude

any alleged impairments that [he] has properly rejected as untrue or unsubstantiated." *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1187 (8th Cir. 1989) (ALJ must include only those impairments supported by reasonable and substantial evidence in a hypothetical question posed to a vocational expert).

Review of the record reveals the ALJ included in the hypothetical questions posed to the vocational expert those impairments she accepted as true and which were supported by substantial evidence on the record as a whole. As discussed above, the ALJ properly weighed the opinion evidence of record, and the hypothetical questions the ALJ posed to the vocational expert adequately represented Plaintiff's limitations as properly assessed by the ALJ. *See Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (finding the ALJ appropriately weighed the treating physician's opinion, and the hypothetical question adequately represented the limitations of the plaintiff). As noted above, the ALJ conducted a legally sufficient credibility determination, and was therefore not required to present to the vocational expert limitations she did not accept as true. *Hunt*, 250 F.3d at 625 (the ALJ may properly exclude impairments that she has properly rejected as untrue or unsubstantiated).

Review of the ALJ's decision reveals she properly exercised her discretion and acted within her statutory authority in evaluating all of the evidence in the record as a whole. Therefore, the Court determines the ALJ's decision is supported by substantial evidence on the record as a whole, is consistent with Social Security Administration Regulations and case law, and must be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Paula Y. Caldwell's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Kilolo Kijakazi for Andrew M. Saul in the court record of this case.

So Ordered this 14th day of April, 2022.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE